# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 CR 239-8 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| ALEX FAHEY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Alex Fahey and Lisa Urbina are charged with conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846, and with using a telephone to facilitate the distribution of cocaine in violation of 21 U.S.C. § 843(b). Presently before the court is Fahey's motion to suppress evidence seized during the search of Apartment C at 230 Crystal Street in Cary, Illinois. The court has granted Urbina's oral motion to join in Fahey's motion to suppress. For the following reasons, Fahey and Urbina's joint motion to suppress is granted.

## BACKGROUND

On April 13, 2006, Special Agent Daniel Thomas of the North Central Narcotics Task Force ("NCNTF") of the Illinois State Police applied to the Circuit Court of McHenry County, Illinois, for a search warrant for an apartment located at 230 Crystal Street in Cary, Illinois. A search warrant was issued that same day by Judge Gerald Martin Zopp. The search warrant commanded the search of:

> the premises located at 230 Crystal Street, Apartment D, Cary, McHenry County, Illinois being described as a multi-tenant, two-story apartment complex consisting of four apartments, with the entire building having grey siding with white trim and a roof with dark grey shingles, the main

> door to the building is located in the center of the south side of the building, and the numbers 230 are affixed to the building above the main entrance with apartment D on the left at the top of the stairs with the letter D affixed to the door.

Fahey's Mot., Ex. A, at FBI 009. This description of the premises is identical to that provided by Thomas in his affidavit in support of the search warrant and nearly identical to that provided by Thomas in his complaint for the search warrant.[1]

In the affidavit, Thomas also described the undercover purchases of user quantities of cocaine by a confidential informant ("CI") who stated that, in two separate controlled buys, the CI "went to the apartment on the left at the top of the stairs and knocked on the door which was marked with the letter D." Fahey's Mot., Ex. C, at FBI 013–14. In his affidavit, Thomas also described how he traveled with the CI and undertook surveillance that allowed him to watch the CI enter and exit the apartment building.

The four-unit apartment building located at 230 Crystal Street is two stories high. A front door opens into a common area. Two first floor apartments, Apartments A and B, are accessible from this common area. A staircase accessible from the common area leads up to the second floor of the building, which contains two apartments, Apartments C and D. As one ascends to the top of the stairs, Apartment C is to the left whereas Apartment D is to the right. Apartment C was shared by defendants Urbina and Fahey. As discussed above, the search warrant identified the premises to be searched as "230 Crystal Street, Apartment D" but also

---

[1] The only apparent difference between the three documents is that in the complaint for the search warrant, the eighth and ninth words of the description of the premises are "Apt. D," whereas in both the search warrant (excerpted above) and the affidavit, the eighth and ninth words of the description of the premises are "Apartment D," without abbreviation. *See* Fahey's Mot., Exs. A–C.

described the apartment as being "on the left at the top of the stairs." Fahey's Mot., Ex. A, at FBI 009.

On April 15, 2006, officers of the NCNTF, assisted by officers of the Illinois State Police North Tactical Response Team ("N-TRT"), executed the search warrant. According to the officers' report, after entering the common area of the building, the executing officers proceeded up the stairs to the upper left apartment. One of the officers noticed that the apartment door was marked unit "C," which was contradictory to the "D" specified in the warrant. That officer told his fellow officers to stand by and requested Thomas. Thomas entered the lobby and pointed to the upper left door. The officers then executed the search warrant at Apartment C, knocking and announcing three times before forcibly breaching the door and entering the apartment.

The government submits that, if called as a witness, Thomas "would testify that he instructed officers to enter Apartment C notwithstanding the search warrant's reference to Apartment D because he was aware of information, not included within his Affidavit, that further proved the upper left apartment was the only intended premises." Gov.'s Resp. at 3. For example, Thomas would testify that he was able to observe that (1) "during both controlled buys, lights were on inside Apartment C during the time the CI was buying the cocaine"; (2) "the hanging window treatments in Apartment C sway[ed] in a manner consistent with air movement caused by the opening and closing of the apartment door at approximately the time the CI would have been entering and leaving the building"; and (3) "[d]uring at least one of the buys, the CI expressly pointed out to Agent Thomas the upper left apartment as the apartment in which the CI bought cocaine." *Id.* at 3–4.

Both Fahey and Urbina were inside Apartment C at the time of the search.[2] The search resulted in the recovery of numerous incriminating items of evidence, including a loaded revolver, cocaine, and marijuana.

**ANALYSIS**

Fahey's motion raises two separate constitutional issues: (1) whether the warrant satisfied the particularity requirement of the Fourth Amendment, and (2) even if the warrant did not satisfy the particularity requirement of the Fourth Amendment, whether the suppression of the seized evidence would be the appropriate remedy. The Fourth Amendment protects the "right of the people to be secure in their persons, *houses*, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV (emphasis added). The Warrant Clause of the Fourth Amendment "categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland* v. *Garrison*, 480 U.S. 79, 84, 107 S. Ct. 1013, 94 L. Ed. 2d. 72 (1987) (quoting U.S. Const. Amend. IV). If "a warrant fails to describe with particularity the place to be searched, it is void." *Jacobs* v. *Chicago*, 215 F.3d 758, 767 (7th Cir. 2000).

In some circumstances, "[e]ven if a warrant is ultimately found to be unsupported by probable cause or lacking in particularity, searches conducted pursuant to the warrant may be valid under the good-faith exception." *Jones* v. *Wilhelm*, 425 F.3d 455, 464 (7th Cir. 2005) (citing *United States* v. *Leon*, 468 U.S. 897, 926, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)). This exception to the warrant requirement only applies, however, if the officers conducting the

---

[2] According to her affidavit, by the date that the search warrant was executed, Fahey had been living at the apartment for two or three weeks. As for Urbina, the affidavit that Thomas filed in support of the search warrant indicates his belief that Apartment D was "her apartment." Fahey's Mot., Ex. C, at FBI 012.

4

search "have manifested an objective good-faith belief in the validity of the warrant." *Id.* As the Supreme Court has explained, the good-faith exception "allow[s] some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Garrison*, 480 U.S. at 87.

Fahey relies on *Jones* v. *Wilhelm*, in which the Seventh Circuit held that "[w]here a warrant is open to more than one interpretation, the warrant is ambiguous and invalid on its face and, therefore, cannot be legally executed by a person who knows the warrant to be ambiguous." 425 F.3d at 463 (citing *Garrison*, 480 U.S. at 86–87). Thus, while Fahey concedes that "the warrant in this case may have been valid when issued," she argues that "when executed[,] the officers knew the warrant to be ambiguous." Def.'s Reply at 5.

In *Jones*, a civil rights case brought under 42 U.S.C. § 1983, the court found that the warrant was valid when issued despite the fact that the scope of the warrant turned out to be ambiguous. 425 F.3d at 462. The plaintiffs lived in one of two apartments on the second floor of an apartment building. The defendant officer was attempting to execute the warrant, which instructed the officers to search "the upstairs apartment on the right" of the apartment building. *Id.* at 458. Because the building had both a front and a back staircase, however, the warrant was ambiguous as to which of the two upper floor apartments was the intended premises. The executing officer was aware, based on his previous surveillance in other investigations, that the warrant was ambiguous. *Id.* at 464. The court held that the search violated the plaintiffs' clearly-established Fourth Amendment rights because the officer "(1) executed a validly issued warrant he knew to be facially ambiguous prior to the execution of the warrant; and (2)

5

circumvented the magistrate judge and resolved the warrant's ambiguity based on information he should have disclosed to the magistrate who issued the warrant." *Id.* at 465.

The court finds that the warrant in this case was valid when it was issued despite the fact that the scope of the warrant turned out to be ambiguous.[3] *See Garrison*, 480 U.S. at 85–86 (finding that the warrant was valid when issued, even though the scope of the warrant turned out to be ambiguous); *Jones*, 425 F.3d at 462 (same). Nevertheless, the evidence clearly indicates that the officers who conducted the search were aware of a fatal defect in the warrant before they executed the search. As detailed in their written report, upon realizing that the door on the left at the top of the stairs was Apartment C, not D, the officers stood by and consulted with Thomas. Relying on information that was not included in the affidavit or otherwise presented to the judge who issued the warrant, Thomas pointed to the apartment on the left, and the warrant was executed on Apartment C.

"Absent exigent circumstances, nothing—neither the determination of probable cause nor the confirmation that a warrant is sufficiently particular—is meant to be left to the discretion of police officers executing a warrant." *Jones*, 425 F.3d at 462 (citing *United States* v. *Brown*, 832 F.2d 991, 996 (7th Cir. 1987) (citing *Stanford* v. *Texas*, 379 U.S. 476, 485, 85 S. Ct. 506, 13 L. Ed. 2d 431 (1965))). Thus, the officers did not violate the Fourth Amendment because the warrant turned out to be ambiguous in scope; rather, the officers ran afoul of the Fourth Amendment because they knew *before* executing the warrant that it did not particularly describe the place to be searched. *See id.* at 463. As in *Jones*, the officers circumvented the magistrate

---

[3] There is no indication that, at the time the warrant was issued, the officers knew or should have known that the scope of the warrant was ambiguous. *See Garrison*, 480 U.S. at 85–86 ("The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate.").

judge and resolved the warrant's ambiguity based on information that was not disclosed to the magistrate who issued the warrant—conduct that constitutes "a violation of clearly-established, constitutional rights." *See id.* at 465.

The government cites *Garrison*, 480 U.S. 79, to support their contention that "the executing officers' act of seeking clarification concerning the premises and then limiting their search only to the defendants' apartment upon apprehending the ambiguity in the warrant" comports with the requirements of the Fourth Amendment. Gov.'s Resp. at 9. In *Garrison*, officers obtained a facially valid warrant allowing them to search what they believed was the only apartment located on the third floor of a building. 480 U.S. at 81. They executed the search throughout the third floor. *Id.* Well into their search, the officers realized that the third floor of the building was in fact composed of two separate apartments, one belonging to McWebb (whose apartment was the intended target of the warrant) and the other belonging to Garrison (the unintended target of the search). *Id.* In upholding the validity of the seizure of contraband from Garrison's apartment, the Court made clear that "[*p*]*rior to the officers' discovery of the factual mistake*, they perceived McWebb's apartment and the third-floor premises as one and the same; therefore their execution of the warrant reasonably included the entire third floor." *Id.* at 88 (emphasis added).

In this case, unlike *Garrison* (but like *Jones*), the officers executed the warrant *after* they realized that it was ambiguous in scope. Furthermore, whereas the text of the warrant in *Garrison* could (prior to the discovery of its ambiguity) reasonably be read to include Garrison's apartment within its scope, the government can make no comparable argument here. Given the fact that Apartments C and D are next door to each other at the top of the stairs, with C on the

7

left and D on the right, the text of the warrant could not reasonably have been read to have favored Apartment C over Apartment D as the intended premises. On the contrary, if the text can be read to favor one over the other, it arguably favors Apartment D, since that is the address specified in the warrant: "[t]he premises located at 230 Crystal Street, Apartment D." Fahey's Mot., Ex. A, at FBI 009. The only text favoring Apartment C, on the other hand, is buried within an 80-word description of the premises and immediately sandwiched between two additional references to Apartment D: " . . . with apartment D *on the left at the top of the stairs* with the letter D affixed to the door." *Id.* (emphasis added).

The government also attempts to analogize the facts of this case to those in *United States v. Owens*, 848 F.2d 462 (4th Cir. 1988), in which a court upheld the constitutionality of a search because the executing officers were able to resolve the ambiguity with respect to the intended premises by relying on other information known to them outside the affidavit. In *Owens*, officers obtained a warrant authorizing them to search an occupied apartment on the third floor of a particular building. *Id.* at 465. Upon arriving at the building, however, they discovered that there were two apartments on the third floor, one of which appeared to have never been occupied, and searched the other apartment. *Id.* at 463, 465. As the Seventh Circuit explained in *Jones*,

> While officers executing a warrant must generally suspend their search if they discover information that renders the warrant ambiguous, *Garrison*, 480 U.S. at 87, . . . the Fourth Circuit upheld the officers' actions in *Owens*, as the affidavit supporting the warrant clearly identified the apartment to be searched as one that was occupied, and no other apartment fit that description.

*Jones*, 425 F.3d at 464–65 (citing *Owens*, 848 F.2d at 465).

Just as the facts in *Owens* were distinguishable from those that the Seventh Circuit confronted in *Jones*, so too are they distinguishable from the facts in this case. Here, as in *Jones*

8

but unlike in *Owens*, "the evidence establishes that the description given in both the warrant and the affidavit fit the description of two separate apartments." *Jones*, 425 F.3d at 465. Thus, here, as in *Jones*, "*Owens* does not apply to this case because the key facts in *Owens* were that the affidavit supporting the warrant specifically targeted an occupied apartment, and no other apartment fit the description given in the affidavit." *Id.*

The government further notes that "of course, [Thomas] turned out to be right because the officers did, in fact, execute the warrant only in Urbina and Fahey's apartment. The officers never entered Apartment D." Gov. Resp. at 9. But just as "the discovery of contraband cannot validate a warrant invalid when issued," *Garrison*, 480 U.S. at 85–86, neither does it validate a search that was unconstitutional because the officers conducting that search knew that the warrant lacked sufficient particularity.

Finally, the government argues that even if the search violated Fahey and Urbina's Fourth Amendment rights, the evidence obtained pursuant to the search should not be suppressed because the officers acted in good faith in executing the search warrant. As discussed above, however, the good-faith exception does not apply here, where, as in *Jones*, the officers (1) executed a warrant they knew to be facially ambiguous prior to the execution of the warrant and (2) circumvented the magistrate judge and resolved the ambiguity amongst themselves based on information that was not disclosed to the magistrate who issued the warrant. *See* 425 F.3d at 465.

## CONCLUSION

For the reasons discussed above, defendants Fahey and Urbina's motion to suppress [#143] is granted.

Dated: January 29, 2008            Enter: _____
                                          JOAN HUMPHREY LEFKOW
                                          United States District Judge